Eric **RODRIGUEZ**, et al., Plaintiffs,

v.

George E. **PATAKI**, et al., Defendants.

Howard T. **Allen**, et al., Plaintiffs,

v.

George E. **Pataki**, et al., Defendants.

No. 02 Civ. 618, 02 Civ. 3843.

United States District Court,
S.D. New York.

Oct. 29, 2002.

Gregory Charles Soumas, Council of Black Elected Democrats, New York City, Leslie Barbour, Michelle Romero, William Low, Cecilia Guiterrez, Evelyn Miller, Seretta McKnight, Tracey Edward, and Donna Swain, Paul Wooten & Associates, Sandra Rivers, Rosemari Mealy, Ronald Cranshow, Sandra Bradford, Esmeralda Simmons, Joan P. Gibbs, Center for Law and Social Justice, Medgar Evers College, City University of New York, Brooklyn, NY, Raymond Fink, Stephen Gocinski, John Quaglione, Patricia Mustaro, Lena Yu, Gail Wolkenberg, Buchanan Ingersoll, Howard Allen, Jeanette Santos, Donald Jirak, Richard Flateau, Charlotte Taylor, Mervyn Campbell, Sarah Brockus, Henry Berger, New York City, for plaintiff.

Daniel Chill, Graubard Miller, Daniel Morris Clifton Budd & DeMaria, Arnold J. Ludwig, H. Reed Witherby, A. Joshua Ehrlich, Fredric S. Newman, Iva J. Lipton, Hogue & Newman & Regal, New York City, Todd Valentine, New York State Board of Elections, Albany, NY, Joel Graber, Assistant Attorney General, New York State Attorney General's Office, New York City, for defendant.

Before WALKER, Chief Circuit Judge, KOELTL and BERMAN, District Judges.

## ORDER

### I. Introduction

On June 18, 2002, Christopher Earl Strunk appearing *pro se* submitted a "Notice of Motion as Intervenor" in *Rodriguez v. Pataki,* 02 Civ. 618, and *Allen v. Pataki,* 02 Civ. 3843.[1] On June 25, 2002, the Attorney General of the State of New York opposed Mr.

---

1. Mr. Strunk's filing is one of several proceedings he has initiated which address election related issues. *See Strunk v. U.S. House of Reps.,* 99 Civ. 2168(NG), Slip Op. (E.D.N.Y. June 10, 2002) (dismissed); *Van Allen v. Democratic State Cmtee of New York,* Index No. 5888–02 (N.Y.Sup.Ct.) (pending); *Fitzgerald v. Berman,* N.D.N.Y. 02 Civ. 0926(NAM) (pending).

Strunk's intervention on the grounds, *inter alia*, that it was not "accompanied by a pleading" as required by Fed.R.Civ.P. 24(c). At a hearing on June 28, 2002, the Court advised Mr. Strunk to submit a short and plain statement of a claim showing that he was entitled to relief. Transcript of Hearing, June 28, 2002 at 6 ("So all we are saying is, give us, instead of volumes, a short and plain statement of the claim showing that you are entitled to relief.") On July 2, 2002, Mr. Strunk submitted a "Verified Supplement to the Complaint," which the Court has deemed an amended Motion to Intervene ("Amended Motion"). *See Rodriguez v. Pataki*, 02 Civ. 618 (S.D.N.Y. July 26, 2002) (Order). *See also* Transcript of Hearing, July 25, 2002 at 32.

Mr. Strunk's Amended Motion is opposed by, among other parties, the Attorney General who argues that the proposed claims "have nothing to do with the constitutional and Voting Right Act challenges to [the] 2002 Congressional and legislative redistricting raised in this action."[2] Attorney General's Memorandum of Law, dated August 5, 2002 ("AG Mem.") at 2. The Attorney General also argues that Mr. Strunk's proposed complaint "fails to state a federal constitutional claim." AG Mem. at 8. On August 12, 2002, Mr. Strunk filed an "Affidavit in Reply" to the Attorney General's opposition. ("Strunk Aff.")

## II. Standard of Review

Because Mr. Strunk is appearing *pro se*, the Court will "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). "Still, this standard is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F.Supp. 259, 262 (S.D.N.Y.1980).

■ In considering a motion for intervention, the Court must balance two competing objectives: "efficiently administering legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir.1994).

## III. Analysis

The *Rodriguez* and *Allen* cases, which were consolidated on May 20, 2002, involve challenges to the Congressional and State Senate redistricting plans adopted by the New York State Legislature in 2002. *See, e.g.*, Amended Complaint, filed Apr. 25, 2002 (*Rodriguez*). Mr. Strunk's claims are different.[3] They appear premised upon: "(1) the idea that censused non-citizens are unconstitutionally included in the population base for Congressional and legislative redistricting; and (2) a claim that registered independents, i.e. voters not enrolled in any of New York's established political parties, are unconstitutionally discriminated against respecting in-

**2.** The Senate Majority Leader, Joseph L. Bruno joins the Attorney General in this opposition. *See* AG Mem. at 2 n.1. In addition, the Speaker of the New York State Assembly, Sheldon Silver, and the *Rodriguez* Plaintiffs opposed Mr. Strunk's intervention. *See* Affidavit of C. Daniel Chill, dated June 25, 2002 ("With regard to the motion to intervene of Christopher Earl Strunk, Speaker Silver opposes that intervention and joins in the opposition of the Attorney General..."); Declaration of Richard D. Emery, dated June 25, 2002 ("I agree with defendants who have urged that Mr. Strunk be denied the right to intervene because the arguments he wishes to make have nothing to do with this lawsuit and will only distract the Court's attention from the issues raised in this case.")

**3.** Mr. Strunk asks the Court for a broad range of relief, including: "reus[ing] the 31 [congression-

al districts previously allotted to New York] so as not to further damage citizen right to self-government [and] declare the reduction of 31 [congressional districts] to 29 [congressional districts] unreasonable" (June 18 Motion at 18); "that Defendants be directed to conduct Federal elections at large" (June 18 Motion at 21); "a mandamus order of Defendants to conduct an alien enumeration within the State" (Amended Motion at 17); "[t]hat there be special consideration by the Court as to fairness for a non-partisan petitioning and candidacy process in preparation for the General Election" (Amended Motion at 17); and "[t]hat the Federal Government Justice Department oversee the General Election first checking non-citizens registered to vote and then irregularities on November 5, 2002." (Amended Motion at 17).

dependent party-building and ballot access." AG Mem. at 1–2. In short, this is not what the *Rodriguez* and *Allen* cases are about.

### A. Intervention as of Right

"In order to intervene as of right under Fed.R.Civ.P. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992). "The intervention application will be denied unless all four requirements are met." *Pitney Bowes,* 25 F.3d at 70. The Attorney General's opposition focuses on factors 2 and 3, arguing that the pending actions fail to "implicate any interest identified by Mr. Strunk such that the 'disposition . . . may as a practical matter impair or impede' his 'ability to protect that interest.' Fed.R.Civ. P. 24(a)." AG Mem. at 3.

In order to claim "a judicially cognizable 'injury in fact' an intervenor must have a direct stake in the outcome of a litigation rather than a mere interest in the problem." *Schulz v. Williams,* 44 F.3d 48, 52 (2d Cir.1994) (quotes and citations omitted); *see also Brennan v. New York City Bd. of Educ.,* 260 F.3d 123, 128 (2d Cir.2001) ("[F]or an interest to be cognizable under Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.' ") (citations omitted). The *Rodriguez* and *Allen* plaintiffs have challenged New York Congressional and State Senate redistricting based upon the 2000 census. Mr. Strunk does not have a "stake" in these claims. Mr. Strunk's challenge arises

from an entirely different (even if difficult to discern) legal theory which embraces alleged violations of the Immigration and Naturalization Act of 1965 and the Anti–Terrorism and Effective Death Penalty Act of 1996.[4] While Mr. Strunk may have a global interest in election issues, he has alleged little or no interest in the Constitutional and Voting Rights Act claims raised in this case. *See, e.g.,* Strunk Aff. at 19 ("I have General Election problems with the redistricting burdens *unlike* many of the Plaintiffs.") (emphasis added). Mr. Strunk acknowledges that the plaintiffs in *Rodriguez* and *Allen* do not raise the same issues he does. Indeed, he asserts that they have been "mis-advised by their counsel" and that if he "were any of the other Plaintiffs or Intervenors I would request that the Court mandate the Defendants to remedy the failure caused by using only registered voters regardless of being a citizen or non-citizens [sic]." Strunk Aff. at 19. *See also United States v. City of New York,* 198 F.3d 360, 365 (2d Cir.1999) ("Appellants' interests . . . are only collaterally related to the subject matter of this enforcement action.")

Mr. Strunk also fails to identify any interest of his that might be impaired by the disposition of this action. Since the issues do not coincide, whatever the outcome of this litigation, Mr. Strunk is free to bring an independent action. As noted, Mr. Strunk is already party to a number of other election cases.[5] *See New York,* 198 F.3d at 366 ("[A]ppellants may still bring an independent action . . . . In fact, appellants recently have filed such a lawsuit.")

### B. Permissive Intervention

Fed.R.Civ.P. 24(b) provides in pertinent part that "[u]pon timely application, anyone

---

4. *See, e.g.,* Amended Motion at 6 ("I believe that Defendants along with Federal authorities non-enforcement of the 1965 Immigration and Naturalization Law combined with the 1996 provision for 'Anti-terrorism and Effective Death Penalty Law' has depressed real property Net Operating Income ('NOI') in the New York 6th 10th, 11th 12th 15th 16th 17th [congressional districts] per the 1990 census apportionment, results in greater taking of distressed real property in targeted Minority majority [congressional districts].") (emphasis excluded).

5. Mr. Strunk tries to distinguish his case in the Eastern District of New York by arguing that that action:

"deal[s] with making the sausage and by what recipe which by now has be[en] tied, over cooked and on December 28, 2000 served to New York in pieces, no matter what I think of the Federal recipe it is there to consume. This case deals with the *result* of a bad recipe not the recipe, and the *consumption* of bad Federal sausage leading to State indigestion because of voids left in the link unequally packaged and served by State Defendants herein."

Strunk Aff. at 21 (emphasis original).

may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." "The principal consideration set forth in the Rule is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y.1996).

■ Mr. Strunk has presented a unique set of claims that are unrelated to the claims and relief sought by the plaintiffs in *Allen* and *Rodriguez.* Mr. Strunk's claims do not have "a question of law or fact" in common with the underlying claims presented here. *See, e.g., Frederick Music Co. v. Sickler*, 124 F.R.D. 553, 555 (S.D.N.Y.1989) ("Reading petitioner's papers as broadly as possible, the Court cannot find any questions of law or fact that petitioner might have in common with the parties.")

It is also clear that intervention would cause undue distraction, delay and prejudice to the parties and to the Court in the adjudication of the *Rodriguez* and *Allen* cases. *See, e.g., Washington Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir.1990) (upholding denial of permissive intervention where "the district court found that permissive intervention would unduly complicate and further delay the litigation.") For example, by letter dated October 11, 2002, Mr. Strunk has sought individualized injunctive relief in the form of "permission to collect signatures outside of the legal window allowed by New York State election law or at the discretion of the Court be placed on the ballot" presumably because the "essential person" helping him collect signatures had fallen ill. In the same application, Mr. Strunk has asked the Court to consider claims he is pursuing in a state court action because he "hold[s] no expectation of a fair judicial decision there before the General Election." We agree with the Attorney General that Mr. Strunk, "should not be permitted to burden this complex litigation...." AG Mem. at 2. Mr. Strunk's intervention would only serve to "unduly delay the expedient disposition of this case." *Frederick*, 124 F.R.D. at 555.

**ORDER**

For the foregoing reasons, Mr. Strunk's ·motion for intervention is denied. Because the Court is dismissing the motion to intervene, Mr. Strunk's letter request for injunctive relief is denied, without prejudice, as moot.